UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF SEYEON IN | Case No. 5:24-mc-80285-EJD<br><br>**ORDER GRANTING LEAVE TO FILE LATE MOTION; DENYING MOTIONS TO QUASH AND FOR PRELIMINARY INJUNCTION AND SANCTIONS**<br><br>Re: ECF Nos. 9, 10, 11 |

Before the Court are three motions filed by Movant John Doe, each related to a 28 U.S.C. § 1782 subpoena served upon Google LLC for the purpose of unmasking Doe's identity. Doe asks the Court to accept his late-filed motion to quash, to quash the § 1782 subpoena, to preliminarily enjoin Applicant Seyeon In from publicly revealing his identity in Korea, and to sanction Google for failing to comply with this Court's orders. The Court **GRANTS** Doe's motion to accept his late-filed motion but **DENIES** Doe's motions to quash and for preliminary injunction and sanctions.

I.   **BACKGROUND**

Applicant is a Korean influencer and streamer. In Decl. ¶¶ 2–5, ECF No. 1-1. In December 2024, the Court granted Applicant's request to serve a 28 U.S.C. § 1782 subpoena on Google. With that subpoena, Applicant sought to unmask Doe's identity so that she could file a defamation suit against him in Korea. § 1782 Order, ECF No. 6. In its § 1782 Order authorizing the subpoena, the Court established several safeguards to protect Doe from the disclosure of his identifying information if he had a basis for defending against the subpoena. First, the Court directed Google to notify Doe that his identifying information was the target of a subpoena within

Case No.: 5:24-mc-80285-EJD
ORDER RE LEAVE TO FILE, MOT. TO QUASH, INJUNCTION, & SANCTIONS
1

1  ten days of Google being served the subpoena. *Id.* at 7. Then, from the date of that notice, the

2  Court provided thirty days for Doe to file a motion to quash and ordered Google not to comply

3  with the subpoena until those thirty days were up. *Id.*

4      Applicant served her subpoena in this matter on December 20, 2024. Zuccarello Decl. ¶ 5,

5  ECF No. 27-1. But in a coincidence, she had also served *another* § 1782 subpoena on Google just

6  two days prior. *Id.* ¶ 4. That earlier subpoena had been authorized by Judge Freeman and

7  concerned underlying events nearly identical to those in this matter. *Compare* § 1782 Order at 1,

8  *with In re In*, No. 24-mc-80301, 2024 WL 5150645, at *1 (N.D. Cal. Dec. 17, 2024). In both,

9  Applicant sought to unmask anonymous users who allegedly defamed her by asserting that she

10 had engaged in sex in exchange for money in Las Vegas. The only meaningful difference between

11 the two subpoenas was that they targeted different anonymous users.

12     Google confused the two similar subpoenas and did not provide notice of this Court's

13 subpoena until January 13, 2025. Zuccarello Decl. ¶ 8. Doe therefore had until February 12, 2025

14 to file any motion to quash under the terms of this Court's § 1782 Order. However, in the absence

15 of a court order to the contrary, Google's internal policy was to provide a twenty-one-day grace

16 period for filing motions to quash. *Id.* ¶ 7. Google mistakenly indicated that the twenty-one-day

17 period applied in its notice to Doe. Zuccarello Decl., Ex. A, ECF No. 27-2 ("Google may produce

18 information related to your Google account in response to this subpoena unless you email a file-

19 stamped copy of a motion to quash or other type of formal objection to [Google] by 10 a.m.

20 Pacific Time on February 03, 2025.").

21     On February 2, 2025, an attorney purporting to represent Doe emailed Google a document

22 styled "Formal Objection." Zuccarello Decl., Ex. B, ECF No. 27-3. The Formal Objection was a

23 19-page document that resembled a legal brief but was not file-stamped and was never filed with

24 this Court. Because the Formal Objection was not a file-stamped motion to quash, Google did not

25 withhold compliance with the subpoena in this matter. Instead, Google responded to the subpoena

26 on February 6, 2025. Zuccarello Decl. ¶ 12.

27

28 Case No.: 5:24-mc-80285-EJD
ORDER RE LEAVE TO FILE, MOT. TO QUASH, INJUNCTION, & SANCTIONS
2

1    On February 13, 2025, Doe emailed Google a copy of his motion to quash, which was not file-stamped. Zuccarello Decl., Ex. C, ECF No. 27-4. Although Doe appears to have mailed his motion to quash on that date, due to postal delays, it was not received by the Clerk's Office and therefore not filed until February 18, 2025. Mot. for Leave to File at 5, ECF No. 11; Mot. to Quash, ECF No. 9 (stamped as filed on February 18, 2025).

Then, in a media interview on February 20, 2025, Applicant's attorney publicly revealed Doe's last name, age range, and the fact that he lives in Korea. PI Mot. at 3 & n.2, ECF No. 10. This reportedly prompted an outpouring of vitriol against Doe, including graphic death threats to both him and his family. *Id.* at 7–8. In response, Doe filed a motion for a temporary restraining order and preliminary injunction. *See id.* The Court denied a temporary restraining order but set an expedited briefing schedule for the preliminary injunction. ECF No. 13.

All pending motions are now ripe for decision. The Court begins with Doe's motion to quash before turning to his requests for a preliminary injunction and sanctions.

## II.    MOTION TO QUASH

As a threshold matter, the Court accepts Doe's motion even though Doe missed the February 12, 2025 deadline by six days. There is "no rigid legal rule against late filings." *Pincay v. Andrews*, 389 F.3d 853, 860 (9th Cir. 2004) (en banc). Instead, courts must equitably weigh the circumstances, considering (a) the danger of prejudice, (b) the length of delay, (c) the reason for delay, and (d) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 395 (1993). Here, a six-day delay poses little danger of prejudice to Applicant, the delay is short, postal issues outside of Doe's control contributed to the delay, and there is no indication of bad faith. The Court consequently **GRANTS** Doe's motion for leave to file and accepts Doe's motion to quash for filing.

Even though the Court accepts Doe's filing, however, it cannot reach the merits of his motion to quash because his motion is moot. A motion becomes moot when granting that motion no longer provides effective relief. *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008). That is the situation in this case, where Google responded to Applicant's subpoena on February 6, 2025,

Case No.: 5:24-mc-80285-EJD
ORDER RE LEAVE TO FILE, MOT. TO QUASH, INJUNCTION, & SANCTIONS
3

Zuccarello Decl. ¶ 12, twelve days before the Court received Doe's motion. There is no longer anything to quash. And using the information that Google produced, Applicant has already identified Doe and named him in her lawsuit in Korean court. Chong Decl. ¶¶ 5–7, ECF No. 16-1. Granting Doe's motion to quash cannot "unring that bell." *In re Grand Jury Subpoena Dated June 5, 1985*, 825 F.2d 231, 234 (9th Cir. 1987); *see also, e.g.*, *Brown v. Sperber-Porter*, No. 16-cv-02801, 2017 WL 10409840, at *2 (D. Ariz. Nov. 6, 2017) (Bade, J.); *Kellgren v. Petco Animal Supplies, Inc.*, No. 13-cv-0644, 2015 WL 11237636, at *2 (S.D. Cal. Apr. 10, 2015); *New Sensations, Inc. v. Does 1–1745*, No. 10-cv-05863, 2011 WL 2837610, at *1 (N.D. Cal. July 18, 2011).

Doe argues against mootness in two ways. First, he invokes the "capable of repetition yet evading review" exception. Under that exception, a challenge to an action does not become moot if (1) the action is too short in duration to be fully litigated before it ends, and (2) there is a reasonable expectation that the same complaining party will later be subject to the same challenged action. *Hamamoto v. Ige*, 881 F.3d 719, 722 (9th Cir. 2018). This inquiry does not center on individual circumstances but rather on the "classes of cases that, absent an exception, would *always* evade judicial review." *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836 (9th Cir. 2014). So, the question is whether motions to quash § 1782 subpoenas—at least those subpoenas that seek to unmask the identities of anonymous internet users—fall under the "capable of repetition" exception as a whole. They do not.

Anonymous users typically have ample time to file a motion to quash when faced with such a subpoena. For example, this Court regularly orders notice of such subpoenas to be served upon the anonymous users who are targeted and also provides a period of time for those users to file any motion to quash. *E.g.*, *In re Kim*, No. 5:24-mc-80152, 2024 WL 3297071, at *4 (N.D. Cal. July 2, 2024); *In re Matsumoto*, No. 5:23-mc-80230, 2023 WL 6959279, at *4 (N.D. Cal. Oct. 19, 2023); *In re Al-Baldawi*, No. 5:22-mc-80329, 2023 WL 3603731, at *4 (N.D. Cal. May 23, 2023); *In re Eshelman*, No. 5:23-mc-80015, 2023 WL 3361192, at *4 (N.D. Cal. May 9, 2023). Indeed, practice shows that the targets of unmasking subpoenas have sufficient time to file

motions to quash before those motions become moot. *See, e.g.*, *hey, Inc. v. Twitter, Inc.*, No. 22-mc-80034, 2023 WL 3874022 (N.D. Cal. June 6, 2023); *London v. Does 1-4*, 279 F. App'x 513 (9th Cir. 2008). Therefore, motions to quash as a class do not satisfy the first requirement needed to trigger the "capable of repetition" exception, and that exception does not apply.

Even if the Court were to consider Doe's individual circumstances, the exception still would not apply because there is no reasonable expectation that Doe will again be targeted by an unmasking subpoena. Applicant has already identified Doe, so she has no reason to request such a subpoena again. And to the extent it matters whether other individuals might seek to unmask Doe's identity later, nothing in the record suggests that such actions are imminent or likely. Thus, individualized considerations would not defeat mootness under the "capable of repetition" exception, either.

Pivoting to his second argument, Doe asserts that his motion to quash is not moot under *Church of Scientology of California v. United States*, 506 U.S. 9 (1992). In *Church of Scientology*, the government argued that the Church's appeal from an order enforcing an IRS summons was moot after the Church complied with the summons and turned over the summonsed materials. *Id.* at 11–12. The Supreme Court concluded that the dispute was not moot. Although "there [was] nothing a court [could] do to withdraw all knowledge or information that IRS agents may have acquired by examination of the [summonsed material]," there was still a live controversy because a court could "effectuate a partial remedy by ordering the Government to destroy or return any and all copies" of the summonsed material. *Id.* at 12–13. According to Doe, his motion to quash falls within *Church of Scientology*'s holding since the Court can still grant partial relief.

The problem with this argument is that Doe's motion to quash does not actually request the partial relief that Doe claims to be available. Doe's motion only asks the Court to quash Applicant's subpoena and therefore prevent Google from complying with it. *See* Mot. to Quash. It does not ask the Court to order the destruction or return of the information received when Google complied with the subpoena, nor does it ask for the Court to prevent Applicant from

Case No.: 5:24-mc-80285-EJD
ORDER RE LEAVE TO FILE, MOT. TO QUASH, INJUNCTION, & SANCTIONS
5

relying on or using information she received in ongoing or future litigation. Both those requests were made for the first time in Doe's reply. Courts usually do not consider new arguments on reply let alone new requests for relief, and the Court declines to do so here. *See United States v. MyLife.com, Inc.*, 499 F. Supp. 3d 757, 766 (C.D. Cal. 2020).

Accordingly, the Court **DENIES** the motion to quash as moot.

### III.     PRELIMINARY INJUNCTION

Next, the Court turns to Doe's request for an injunction barring Applicant "from further disclosing Doe's identifying information" and directing her to take unspecified "corrective measures to mitigate the harm already caused." PI Mot. at 9. Doe argues that this relief is necessary because he has faced an influx of death threats against himself and his family since Applicant's attorneys revealed partial identifying information to the public. The Court is sympathetic to Doe's situation—no matter the topic of discourse or the intensity with which participants in that discourse believe in their positions, violent threats have no legitimate role in any setting. However, the Court also lacks a role it can play in addressing the threats against Doe.

At the outset, the Court observes that 28 U.S.C. § 1782 does not authorize it to grant injunctive relief. Doe also does not raise any legal claims against Applicant for which the Court has power to issue an injunction. Doe instead invokes the Court's inherent power. While inherent power is broad, it is not a freestanding license for a court to enforce its own notions of fairness on the litigants before them.

At core, the inherent power is the power for a court "to police itself." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). For example, it includes the power for a court to control admission to its bar, prescribe codes of conduct for attorneys who appear before it, and discipline appearing attorneys who violate those codes. *Id.* at 43. It also includes the power of contempt to punish failures to comply with court orders and for disruptions to court proceedings. *Id.* at 44. In short, the inherent power allows courts to regulate the proceedings before them and enforce their orders. It does not "concern[] relations between the parties" or the wrongs that one party might commit against another. *Id.* at 46.

Case No.: 5:24-mc-80285-EJD
ORDER RE LEAVE TO FILE, MOT. TO QUASH, INJUNCTION, & SANCTIONS
6

Applicant did not violate any order. When the Court authorized service of her proposed § 1782 subpoena, it did not place any limits on how she could use the information she received. § 1782 Order at 7. Nor does Applicant's public, partial disclosure of Doe's identity implicate any regulation of legal practice before this Court. The Court is aware of no Local Rule or ethical rule that requires attorneys to maintain the anonymity of opposing parties absent a judicial order. In fact, the opposite is true, as "[t]he normal presumption in litigation is that parties must use their real names." *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010). The closest that Doe comes to alleging misconduct capable of triggering the Court's inherent power is to argue that Applicant misled the Court by representing she sought Doe's identity "solely to 'proceed with a civil case against [Doe] in Korea.'" PI Reply at 3, ECF No. 25 (quoting § 1782 Appl. at 9, ECF No. 1). But "solely" is Doe's word, not Applicant's. The Court does not read Applicant's papers as representing that she would only use Doe's identity to file a lawsuit in Korea and nothing else. Because Applicant did use information about Doe's identity to perfect her Korean lawsuit, Chong Decl. ¶¶ 5–7, she did not mislead the Court.

Ultimately, Doe seeks a preliminary injunction as relief for the wrong that Applicant allegedly committed against him by releasing information about his identity. The Court's inherent power does not provide a source of authority for the Court to adjudicate that private dispute between the parties. Accordingly, the Court **DENIES** a preliminary injunction.

## IV.     SANCTIONS

The Court does, however, have authority to sanction Google for violations of the Court's § 1782 Order. Google admits that it failed to comply with that Order, first by exceeding the ten-day deadline to notify Doe after receiving the § 1782 subpoena, and second by responding to that subpoena before the thirty-day period for Doe to file his motion to quash had elapsed. Google Br. at 1, ECF No. 27; Zuccarello Decl. ¶¶ 8, 12. Having admitted fault, Google asks for leniency because its failure to comply was accidental and did not prejudice Doe.

When invoking its inherent power, a court may impose sanctions only when there has been either "(1) a willful violation of a court order; or (2) bad faith." *Am. Unites for Kids v. Rousseau*,

985 F.3d 1075, 1090 (9th Cir. 2021). A violation is willful when it is deliberate, but neither improper motive nor bad intent is required. *Id.* "On the other hand, bad faith, including conduct done vexatiously, wantonly, or for oppressive reasons, requires proof of bad intent or improper purpose." *Id.*

In these circumstances, the Court is satisfied that Google acted neither deliberately nor with bad faith. Although Google should have kept better track of its legal obligations, the fact that Google received two separate § 1782 subpoenas within days of each other, both from Applicant, and both relating to similar underlying conduct in Korea, convinces the Court that Google's failure to provide notice of the subpoena to Doe within ten days was accidental. *See* Zuccarello Decl. ¶¶ 4–5, 8. Likewise, even though Google did not wait thirty days before complying with the subpoena, Google explained that its standard policy is to provide a twenty-one-day notice period. *Id.* ¶ 7. When Google complied with the subpoena in this matter twenty-four days after giving notice to Doe, it followed its standard notice period. *Id.* ¶¶ 8, 12. While Google should have recognized that the Court ordered a thirty-day period, the fact that Google waited out its standard period convinces the Court that Google's actions were due to mistake, not deliberate choice or bad faith.

As Google's actions do not meet the standard for inherent power sanctions, the Court does not address whether those actions prejudiced Doe. The Court **DENIES** sanctions against Google.

## V.     CONCLUSION

The Court **GRANTS** leave for Doe to late-file his motion to quash but **DENIES** that motion to quash along with Doe's motion for preliminary injunction and sanctions. To be clear, this is not an endorsement of Applicant's or Google's actions, but rather as a result of the limits on the Court's authority in this § 1782 matter. That said, Doe is not necessarily without recourse in this situation. He may have civil claims against Applicant or Google based on the conduct that he has described in his motions. It is just that the Court's inherent power is not a substitute for filing a civil suit.

Case No.: 5:24-mc-80285-EJD
ORDER RE LEAVE TO FILE, MOT. TO QUASH, INJUNCTION, & SANCTIONS
8

The Clerk of Court shall close this file.  Applicant's requested subpoena has been authorized, issued, and complied with, so there is nothing more for the Court to do in this matter.

**IT IS SO ORDERED.**

Dated:  April 2, 2025

EDWARD J. DAVILA
United States District Judge

Case No.: 5:24-mc-80285-EJD
ORDER RE LEAVE TO FILE, MOT. TO QUASH, INJUNCTION, & SANCTIONS
9